IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Christine G Nelson,<br><br>Plaintiff,<br><br>v.<br><br>Local 1422, International Longshoreman's Association; and South Carolina Stevedores Association.<br><br>Defendants. | Civil Action No: 2:19-cv-01545-DCN-MGB<br><br>COMPLAINT<br><br>Jury Trial Requested |

Comes now the Plaintiff, Christine G Nelson, individually by way of the Complaint in the above-captioned matter, alleges and shows unto this Honorable Court the following:

**NATURE OF CLAIMS**

This is a civil rights actions arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff is an employee of Local 1422 International Longshoreman's Association; (''ILA'') South Carolina Stevedores Association (''SCSA'') (collectively ''Defendants''). Plaintiff alleges she was sexually harassed and when reported the harassment and discrimination the Defendants retaliated against her.

**PARTIES**

1.      Plaintiff, Christine G. Nelson is a resident of Charleston County, South Carolina.

2. Upon information and belief, Local 1422 ILA. is a labor union authorized to do business within the State of South Carolina and is doing business in Charleston County, South Carolina.

3. Upon information and belief, SCSA. is a trade association authorized to do business within the State of South Carolina and is doing business in Charleston County, South Carolina.

**JURISDICTION & VENUE**

4. At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce and employing fifteen (15) or more employees within the meaning of Sections 701 of Title VII, 42 U.S.C. § 2000e(b), (g), and (h), and S.C. Code Ann. § 1-13-30 of the South Carolina Human Affairs Law.

5. Within 300 days of the unlawful employment practices complained of here, Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 415-2018-00354, 415-2018-01430, 415-2018-00615, 415-2019-00237, 415-2018-1429, and 415-2019-00238. She her Notice of Suit Rights Letters are dated February 27, 2019. (Exhibit 1)

6. Plaintiff has timely filed this action within ninety (90) days of the date of her Notice of the Right to Sue letter from the EEOC.

7. This Court has jurisdiction of the state claims alleged herein, and of the FLSA claim per 28 U.S.C. § 1331, and 42 U.S.C. § 2000e-5.

8. Based upon the above, jurisdiction and venue are proper in this Court.

**FACTS**

9.      Defendant Local 1422 constitutes the exclusive bargaining unit for Longshoremen in the Port of Charleston. It's part of the ILA, which is the largest union of maritime workers in North America.

10.     Defendant SCSA is trade association, it acts as the collective bargaining representative for its member

11.     Plaintiff is a black female. The Defendants discriminated against her and harassed her based upon her sex.

12.     Plaintiff has been employed as a laborer with Local 1422, ILA and the South Carolina Stevedore Association since October of 2013.

13.     Plaintiff's primary duties are working on container ships loading and unloading cargo.  Plaintiff usually works on the car boat, which involves driving BMW automobiles on and off the ships.

14.     The work shuttle is the car that drives on and off the ships with the laborers, so they can drive the BMW's on and off the ship.  Two people sit in the front, the driver and a passenger; three people sit in the back seat.  The back seat is very crowded.

15.     The ILA is a predominately male work force.

16.     Usually Plaintiff is the only female in the work shuttle. The male employees require the females to sit in the middle seat.

17.     Plaintiff, as well as other female laborers, have been touched inappropriately, and rubbed against while they are riding in the back seat of the work shuttle.

18.    For instance, Ms. Nelson had a male ILA laborer put his hand on the seat so when she sat down, she sat on his hand.  Then he proceeded to touch Plaintiff's buttocks in an inappropriate manner.

19.    Ms. Nelson spoke to other women who reported he did the same thing to them.

20.    Many of the female laborers are afraid to report being touched inappropriately for fear they will be retaliated against and will not get selected to work.

21.    On April 8, 2017, while Plaintiff was on the work shuttle, Dennis Snipe, ("Mr. Snipes") a co-worker, placed his hand on her upper thigh near her crotch.  Ms. Nelson reported the incident.

22.    After Plaintiff reported Mr. Snipes, he approached her in the parking lot when she was in my car, he was holding a piece of paper, which she assumed was the notice that she had reported him.  He was screaming "what is this".  Plaintiff was scared, she locked her door and beeped the horn until Mr. Snipes left.

23.    The allegations against Mr. Snipes were sustained and he was suspended for 30 days. Mr. Snipes was very angry at Ms. Nelson.  Ms. Nelson is afraid of Mr. Snipes and does not like working in the same area as him. She has told this to the Defendants.

24.    Despite this, Defendants still allow Mr. Snipes to work near Plaintiff.

25.    The Defendants have taken Plaintiff's concerns seriously nor have they taken remedial measures to insure her safety and the safety of other females.

26.    Upon information and belief, Mr. Snipes is a good friend with Melvin Smith who is an ILA Header.    Mr. Smith is a Header on the car boat which is where Plaintiff usually works.

27.     When Plaintiff reported Mr. Snipe, Mr. Smith retaliated against her by not picking her to work on the car boat.  Because of this Plaintiff's hours decreased, and her income has decreased.

28.     On May 21, 2017; Plaintiff had a meeting with Kenneth Riley, the President of the ILA.  She informed Mr. Riley, she believed she was being retaliated against by Mr. Smith because she reported his friend, Mr. Snipes.

29.     Despite this, Mr. Smith still did not select Plaintiff to work on the car boat. Plaintiff tried to work other places on the docks, but it was difficult for the female laborers to get work.

30.     Women are not allowed to do many of the jobs on the docks, such tying down the ships. Currently there are no female headers that work in Charleston.

31.     On August 7, 2017, Plaintiff called Kenneth Riley the President of Local 1422 on his cell phone and reported that Mr. Smith was retaliating against her by not selecting her for jobs.

32.     A few days after this, on August 9, 2017; Mr. Smith approached Plaintiff in the union hall.  He grabbed her hand and twisted it at the wrist.  Plaintiff yelled "why are you touching me".

33.     Plaintiff reported what Mr. Smith, however the video tape did not have audio, so you could not hear her call out.  Also, a co-worker standing next to Plaintiff blocked the camera's view.  Although it appears Mr. Smith is doing something with his hands, you are unable to see him grab and twist Plaintiff's wrist on the video.

34.    The Port Grievance Committee found against Plaintiff, "for making false allegations and representation of the facts on the day in question".  Plaintiff was suspended for 30 days without pay.

35.    Plaintiff should not be punished for reporting sexual harassment or retaliation.

36.    Because of the issues Plaintiff was experiencing at work, she started suffering from depression, having panic attacks, and had difficulty sleeping.

37.    On July 3rd Plaintiff's doctor wrote a letter requesting a remedial measure. Plaintiff's doctor asked that Plaintiff be allowed to ride in the front of transport shuttled due to "anxiety related to the work trauma she experienced."

38.    Initially the Defendants took remedial measures, and allowed her to ride in the front of the work shuttle.  However, on July 31, 2018 Plaintiff was advised by the Defendants that she could no longer work "because of the letter".  The Defendants claimed Ms. Nelson was danger to herself and other on the docks because of her doctor's accommodation letter.

39.    Plaintiff provided Defendants with additional information from her doctor explaining she is not a danger to herself or others.  Plaintiff even agreed to let Defendants talk to her doctor to obtain more information to verify that she is not a danger. Despite this, Plaintiff was not allowed back to work until February 14, 2019.

40.    Being out of work for such a long period caused Plaintiff financial hardship. Plaintiff also lost her health insurance, container royalties.

41.    Plaintiff believes the Defendants alleging she was a danger to herself and others was pretext to retaliate against her.  The "true reason" the Defendants suspended

Plaintiff and kept her out work is because they were retaliating against her, for reporting what was occurring on the work shuttle and asking for remedial measures.

42.    Proximately and directly as a result of Defendants' conduct, Plaintiff has suffered damages including, but not limited to, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, attorneys' fees, and costs.

### FIRST CAUSE OF ACTION
### (Title VII-Discrimination)
### (Harassment, Hostile Work Environment, Retaliation)

43.    Plaintiff incorporates all allegations above into this cause of action.

44.    Defendants. engaged in an industry affecting commerce and had more than 500 employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year of the discrimination.

45.    Plaintiff was at all times relevant here, an employee of Defendants.

46.    Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against individuals with respect to the terms, conditions, or privileges of employment because of an individual's sex.

47.    An employee's work environment is a term or condition of employment.

48.    An employee's work hours constitute a condition of employment.

49.    A valid Title VII claim for unlawful sexual harassment is when a Plaintiff demonstrates that there was offending conduct that was unwelcome, based on sex, and was sufficiently sever or pervasive to alter employment and creates an abusive work environment that imputable to the employer.

50.     The conduct at work which Plaintiff was subjected to was objectively and subjectively severe and pervasive, in that it altered the conditions and created an abusive and hostile working environment.

51.      Plaintiff was a victim of sexual harassment and she was subjected to humiliation, harassment and retaliation.

52.     When Plaintiff was retaliated against for reporting the harassment and retaliation.  The Defendants subjected her to further retaliation in that she was suspended for 30 days without pay.

53.     Defendants had actual and constructive knowledge of the conduct described herein and failed to take reasonable steps and remedial measures to prevent the harassment against Plaintiff.

54.     Defendants violated Title VII, by failing to adequately supervise, control, report and/or discipline employees harassing conduct.

55.     Within three hundred (300) days of Defendants discriminatory actions set forth above, Plaintiff filed a charge of discrimination based on sex discrimination in employment with the Equal Employment Opportunity Commission ("EEOC"). Thereafter, the EEOC issued right to sue letters dated February 27, 2019

56.     As a direct and proximate result of Defendants violations of Title VII, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

57.     Plaintiff has been compelled to retain the services of counsel to enforce the terms and conditions of the employment relationship with Defendants and has incurred,

and will continue to incur, legal fees and costs. Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C. § 2000e-5(k).

58.    Defendants' actions as set forth above were intentional, willful, wanton, reckless, malicious, and with utter disregard for Plaintiff's rights protected by federal law, therefore, Plaintiff is entitled to recover punitive damages.

59.    Defendants had no legitimate business reasons for the actions they took against Plaintiff.  Each of said acts of retaliation are in violation of Title VII.

60.    Plaintiff believes that in addition to the practices enumerated above, Defendants may have engaged in other discriminatory practices against which are not yet fully known.  If and when, such discriminatory practices become known, Plaintiff will seek leave of Court to amend this Complaint in that regard.

61.    Defendants, via its managing agents, officers, and employees, have engaged in intentional retaliation by suspending Plaintiff and have done so with indifference to Plaintiff's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A. Enter a Declaratory Judgement that Defendants violated Plaintiff's federally protected rights under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e-5)

B. Order Defendant to provide appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

C. Order Defendants to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs above, such as debt-related expenses, medical expenses, and other expenses incurred by her, which were reasonably incurred as a result of Defendants' conduct, in the amounts to be determined at trial.

D. Order Defendants to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of in paragraphs above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, the amounts to be determined at trial.

E. Order Defendants to pay Plaintiff punitive damages for its malicious and reckless conduct described in paragraphs above, in amounts to be determined at trial.

F. Award Plaintiff attorneys' fees, expenses and costs for this action.

G. All such further relief as the Court deems just and equitable under the causes of action set forth above

### JURY DEMANDED

Plaintiff Nelson hereby demands a trial by jury.

Respectfully submitted,

s/ Marybeth Mullaney
Marybeth Mullaney (Fed. ID No. 11162)
Mullaney Law
1037 Chuck Dawley Blvd D104
Mount Pleasant, South Carolina 29464
Phone (843) 588-5587
Fax (843) 593-9334

marybeth@mullaneylaw.net

**Attorney for Plaintiff**

Mount Pleasant, South Carolina
May 29, 2019